## Case No. 7,202.

### The JAMES T. ABBOTT.

[2 Spr. 101.] [1]

District Court, D. Massachusetts. Jan., 1864.

F. C. Loring & John Lathrop, for libellants.

John C. Dodge, for claimants.

SPRAGUE, District Judge. The suit in this case is brought by the owners, master, and crew of the steam-tug Warrior, for an alleged salvage service in pulling the brig James T. Abbott off the shore at George's island, in Boston harbor, and towing her to Boston. The first question is whether the service was salvage or towage. It appears that the brig while beating through the Narrows, and while in stays, got ashore. This was on the 27th of December, about ten o'clock at night. She remained there until eleven o'clock the next day, when she was pulled off and towed to Boston. I have no doubt that this is a salvage service. The vessel was ashore thirteen hours, and during one high tide. A vessel in that situation cannot be considered as not in some unusual peril, not wholly exposed, yet not so safe as she would have been in a harbor. The wind was not violent at the time nor the weather severe, but the wind was blowing from the north-east, and a storm was threatening which afterwards came. The master of the brig testifies that he made the usual signal for steam only, and did not set a signal of distress; and it is argued that he had a right to choose whether to accept a salvage service or not. This is true. But when a vessel is in a condition to have a salvage service done to her, and the master makes a signal for a steamer, it is considered as a signal for assistance. [2]

What did he want a steamer to do? Did he want it merely to tow him? Certainly not. He wanted it to get his vessel off. The wind at the time the vessel was got off was fair for Boston. I cannot suppose that if the vessel had not been ashore, the master would have made a signal for a steamer. I do not doubt that the master thought a steamer would render him assistance for towage compensation; but if a vessel, really in want of salvage assistance, makes a signal for a pilot, or for a steamer, and assistance is rendered in pursuance of that signal, the signal is to be construed as a signal for assistance, although not necessarily one of distress, and the service as a salvage one.

The only question is as to the amount of compensation; and I have some difficulty in satisfying my mind on this point. The value of the property saved was between seven and eight thousand dollars. The master had made no effort to get the vessel off. I do not think she was in any immediate peril, though there was certainly some peril. The wind was from east or north-east; the weather was thick, and a snow-storm impending, and the night following there was quite a gale. At the time the service was rendered, the wind was not very violent or the weather severe; it was rather a mild day for winter. The crew of the tug were not exposed to any greater hardship than they would have been, if their vessel had been about her regular business, towing vessels. The master did not take any responsibility in going to the assistance of the brig, as one of the owners was on board.

Some question was made as to the risk which the tug ran, in going where she did in shoal water. The owner and the master testified that the tug drew eight feet of water, and once when they sounded they found only nine; that there were rocks there, and that if a rock had struck the fans of the propeller, the tug would have been disabled, and would have drifted ashore. There is some question whether the anchor was ready or not on board the tug. However this may be, I consider that the tug was in some danger, but not in any considerable danger.

In estimating the amount of compensation one criterion is, for what would the owner of the tug, if he had known all the circumstances of the case, have agreed to let his boat go down to get the vessel off; he to receive nothing, if not successful. [3] Considering all the facts in the case, I think three hundred and twenty dollars, and costs, is the proper sum to be awarded. Judgment for libellants.

---

[1] [Reported by John Lathrop, Esq., and here reprinted by permission.]

[2] Counsel for the libellants cited on this point The Susan [Case No. 13,630]; The John Bunyan, 8 Law T. (N. S.) 704; The Little Joe, 2 Law T. (N. S.) 473, 1 Lush. 88.

[3] In The M. B. Stetson (U. S. Dist. Ct. Mass., Jan., 1867) [Case No. 9,363], Lowell, J., after citing the above, said: "It is obvious, however, that this rule will not answer for all or most cases, because it takes into view only one side of the question, the risk, labor, and expense of the salvors, without regard to the value of their services to the other party. Where the necessity is more urgent, and no time is given to bargain, and to choose between different offers. another element. namely. what would the owners of the property be willing to give rather than that the service should not be rendered, may fairly be looked at."